## HUTCHINSON *v.* THE NORTHFIELD.

**APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.**

No. 213. Argued February 7 and 8, 1878. — Decided February 18, 1878.

On a review of the facts it is held that the Northfield was free from fault and the decree below is affirmed.

THE case is stated in the opinion.

MR. JUSTICE HUNT delivered the opinion of the court.

The leading facts in this case were concurred in by the District Court and by the Circuit Court. Upon a careful review we are of the opinion that the conclusions reached were correct.

The schooner was free from fault, and her owner is confessedly entitled to his damages for her loss.

The misconduct of the Hunter (the tug) is so clearly established that it would be time wasted to illustrate it, and while the absence of fault on the part of the Northfield is a subject of more strenuous contention, we do not find much difficulty on that point.

The charges against her are, that she ran at too great speed, and that she held her speed too long.

She was a ferry boat running between New York and Staten Island, her ordinary rate of speed being sixteen miles to the hour, or thereabouts. On this occasion she put out of her New York slip at that rate of speed, with a helm partly ported, in the forenoon of a pleasant day, on an ebb tide, with smooth water, heading about southwest, with the tug and its tow on her starboard side and in full view. She made her speed and her course with deliberation and upon the facts as they were before her. Her officers perfectly understood that under the 13th of the sailing rules the responsibility devolved on her of keeping out of the way of the tug. The officers of the tug also perfectly understood that under the 18th of the same rules it was their duty to keep the tug on its course. The officers of each vessel had the right to assume that the other vessel would do its duty, and to make their course and keep their speed upon that assumption. The evidence shows that the two vessels kept their courses and their speed, the tug going from four to six miles per hour, until the Northfield was within some eight hundred or nine hundred feet of the tug, when the latter stopped, so that, as the captain of the lost schooner says, she lay perfectly still on the water and ported her helm. The Northfield at once reversed her engine, but could not check her speed sufficiently to prevent a collision, and struck the schooner just forward of the mizzen rigging, about thirty feet from her stern, the schooner projecting aft of the tug.

If the tug had made thirty feet while the Northfield was making eight hundred feet, between the stopping of the tug and the collision, it is plain there would have been no collision. If the speed of the tug was five miles to the hour, it would have been about one-third of that of the Northfield, if not stopped or checked, and she would have gone one-third of this distance, that is, two hundred and sixty-three feet, before the Northfield could have reached her by traversing the eight hundred feet. All this was evident to the experienced eye of the manager of the Northfield, and no negligence can be charged in relying and acting upon it.

If the tug was moving at the speed of two miles only to the hour, as is assumed in some places, the proposition would not be so manifest, but the fault on the one side and the accurate judgment on the other would be equally certain. The convergence of the lines would have caused no material difference in the position of the vessel.

It is not alleged in the briefs that the failure of the engine of the Northfield to turn on its centre, by which the reverse motion could have been sooner obtained, is evidence of a defective machine, or of improper management of it. It is alleged simply as evidence of unreasonable speed, by which the prompt handling of the vessel was embarrassed.

This depends entirely upon the suggestions already discussed, and if the speed was reasonable, the course correct and the judgment wise, the failure of the engine to act as desired is an incidental result merely and no fault in consequence of it can be charged upon the Northfield.

There was no good reason at any time to suppose that the Northfield intended to cross the bows of the tow. As she came out of her slip she headed to the south, swinging gradually to the west, and for a time her course pointed across the bow of the tow; but this was temporary, and was constantly altering. The attempt thus to cross would have been rash and attended with many dangers, and never was, in fact, entertained for a moment by the Northfield.

We are of the opinion that the Northfield was free from fault, and that the decree should be                     *Affirmed.*

*Mr. Henry J. Scudder* and *Mr. James C. Carter* for appellant.

*Mr. W. A. Beach* and *Mr. Miles Beach* for appellee.